## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| ELITE PRECISION CUSTOMS LLC; TIM HERRON; FREDDIE BLISH; and FIREARMS POLICY COALITION, INC., a nonprofit corporation;<br><br>*Plaintiffs*,<br><br>v.<br><br>The BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; JAMES R. MCHENRY III, in his official capacity as Acting Attorney General of the United States; MARVIN G. RICHARDSON, in his official capacity as the Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives,<br><br>*Defendants*. | Civil Action No. _4:25-cv-44 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Elite Precision Customs LLC ("Elite Precision"); Tim Herron; Freddie Blish; and Firearms Policy Coalition, Inc. ("FPC"), file this Complaint for Declaratory and Injunctive Relief against Defendants the Bureau of Alcohol, Tobacco, Firearms and Explosives; James R. McHenry III, Acting Attorney General of the United States, in his official capacity; and Marvin G. Richardson, Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, in his official capacity, and state the following:

### INTRODUCTION

1.     This lawsuit challenges the federal ban on interstate transfers of handguns from federally licensed dealers to individuals who are otherwise eligible to purchase and possess a handgun for lawful purposes but cannot purchase directly from a dealer because they do not live

1

in the same state as the dealer. Under federal law, it is a crime for an individual to "transport into or receive in the State where he resides . . . any firearm purchased or otherwise obtained by such person outside that State," unless the transfer was by "bequest or intestate succession." 18 U.S.C. § 922(a)(3). Federal law also bars licensed federal firearms dealers from selling firearms to individuals who do not reside within the state in which a dealer's place of business is located. *See* 18 U.S.C. § 922(b)(3) (collectively with § 922(a)(3), the " Nonresident Handgun Purchase Ban").

2.      Despite mandating a nationally accessible background check (or state-level equivalent) to confirm proposed purchasers are not barred by federal law from possessing a handgun, 18 U.S.C. § 922(t), and despite exempting interstate sales and transfers of shotguns and rifles from the ban, 18 U.S.C. § 922(b)(3), otherwise-eligible individuals cannot purchase handguns directly from out-of-state dealers. The only way to purchase a handgun from an out-of-state dealer is to arrange and pay for that dealer to ship the handgun to an in-state dealer, at personal cost and substantial delay, to complete the transfer. This imposes a hardship on Plaintiffs Herron and Blish, who frequently travel and wish to purchase handguns directly from licensed dealers without having to coordinate transferring them to an FFL in their home states. It also imposes a hardship on customers and prospective customers of Elite Precision, who are sometimes individuals who live outside of Texas and who either have to forego purchases or coordinate a purchase through a middleman FFL in their home state.

3.      This ban violates the Second Amendment. In *Mance v. Holder*, 74 F. Supp. 3d 795 (N.D. Tex. 2015), this Court held that the Nonresident Handgun Purchase Ban violated the Second Amendment and enjoined its operation. The Fifth Circuit reversed in *Mance v. Sessions*, 896 F.3d 699 (5th Cir. 2018). Using the "two-step" test later rejected in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), the Fifth Circuit concluded that the Nonresident Handgun

Purchase Ban survived strict scrutiny: the Circuit determined that the ban was narrowly tailored to achieve the compelling interest of preventing the circumvention of state law restrictions on handgun possession. *Mance*, 896 F.3d at 706–11.

4.      *Bruen* abrogated the approach employed by the Fifth Circuit in *Mance* by expressly rejecting the use of means-end scrutiny as inconsistent with *District of Columbia v. Heller*, 554 U.S. 570 (2008). *Bruen*, 597 U.S. at 17–22. *Bruen* reiterated that, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17. And a court may "[o]nly" conclude that the conduct falls outside the Second Amendment's protection if the government can "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 24.

5.      This Court already conducted the type of historical analysis that *Bruen* requires in *Mance*. The Court observed that "the earliest known state residency restrictions on the purchase or possession of firearms" occurred in 1909. 74 F. Supp. 3d at 805 ("Defendants have not presented, and the Court cannot find, any earlier evidence of longstanding interstate, geography-based, or residency-based firearms restrictions."). Given this history, the Nonresident Handgun Purchase Ban must be enjoined again.

**PARTIES**

6.      Plaintiff Elite Precision is licensed firearms retailer located in Mansfield, Texas within Tarrant County. But for the enforcement of the laws challenged herein and the risk of criminal prosecution and the loss of its firearms license and livelihood, Elite Precision would sell handguns to law-abiding individuals who do not reside within Texas. For any such sales, Plaintiff Elite Precision would comply with the legal conditions of sale in both Texas and the customer's state of residence. To that end, Elite Precision has out-of-state customers who desire to purchase

3

handguns directly from Elite Precision but have refrained from doing so due to Section 922(a)(3) or have structured such purchases through dealers in their home state, adding both cost and complexity to the transaction.

7.    Plaintiff Tim Herron is a resident of New Mexico. But for the enforcement of the laws challenged herein and the risk of criminal prosecution and the potential loss of his Second Amendment protected rights, Herron would purchase a handgun from Elite Precision.

8.    Plaintiff Freddie Blish is a resident of Arizona. But for the enforcement of the laws challenged herein and the risk of criminal prosecution and the potential loss of his Second Amendment protected rights, Blish would purchase a handgun from Elite Precision.

9.    Plaintiff Firearms Policy Coalition, Inc. ("FPC"), is a nonprofit membership organization incorporated under the laws of Delaware with its principal place of business in Clark County, Nevada, and members across the country. FPC works to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic freedoms. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms and protect the means by which individuals may exercise the right to carry and use firearms. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC brings this action on behalf of its members, including Plaintiffs Elite Precision, Herron, and Blish, who are members.

10.    Defendant James R. McHenry III is the Acting United States Attorney General and is responsible for executing and administering the laws, regulations, customs, practices, and policies of the United States. Defendant McHenry leads Defendant United States Department of Justice ("DOJ"). Defendant McHenry is ultimately responsible for overseeing the DOJ, including

the Defendant Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), which is an arm of the DOJ. Defendant McHenry is sued in his official capacity.

11.    Defendant Marvin G. Richardson is the Director of Defendant ATF. As Acting Director of ATF, Defendant Richards is responsible for the creation, implementation, execution, and administration of the laws, regulations, customs, policies, and practices of the United States, particularly those related to firearms. He is currently enforcing and has been enforcing at all times relevant to the Complaint, the laws, regulations, customs, practices, and policies underlying the Nonresident Handgun Purchase Ban. Defendant Richardson is sued in his official capacity.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiffs' claims arise under federal law.

13.    This Court has jurisdiction to grant the declaratory relief sought, pursuant to 28 U.S.C. § 2201, and additional relief pursuant to 28 U.S.C. §§ 2202, 2412.

14.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1)(B) and (C) because Elite Precision operates and has its principal place of business in this district; the prohibited transaction giving rise to this action would occur in this district; and Plaintiff FPC has members (including Plaintiffs) that operate, reside, and/or would transact—and whose rights are primarily being infringed—in this district.

## BACKGROUND ON NONRESIDENT HANDGUN PURCHASE BAN

15.    Congress enacted the Nonresident Handgun Purchase Ban as part of the Gun Control Act of 1968. 18 U.S.C. §§ 921–31. Sections 922(a)(3) and 922(a)(5) "forbid individuals from transporting into or receiving in their state of residency any firearm acquired outside of that state, except for firearms acquired by bequest or intestate succession or pursuant to a transfer from

a federally licensed dealer under 18 U.S.C. § 922(b)(3)." *Mance*, 74 F. Supp. 3d at 799. These consumer-targeted bans are backed up by a retailer-targeted ban that criminalizes selling or delivering handguns "to any person who the [dealer] knows or has reasonable cause to believe" resides in another state. 18 U.S.C. § 922(b)(3); *see also* 27 C.F.R. § 478.99(a) (prohibiting licensed dealers from selling or delivering handguns to anyone "who the licensee knows or has reasonable cause to believe does not reside in . . . the State in which the licensee's place of business or activity is located").

16.    Although the Fifth Circuit upheld the challenged regulatory scheme in *Mance* applying strict scrutiny, the fact is that even considering the policy justifications for the Act (which are no longer relevant under *Bruen*), the theory that out-of-state handgun transfers would permit evasion of state laws because no firearm dealer could be expected to know the laws of all 50 states and the District of Columbia simply does not make sense today.

17.    As this Court observed in *Mance*, those same interests are separately addressed— and much more effectively—by modern background check requirements:

> When the federal interstate handgun transfer ban was enacted in 1968, an instant electronic background check system did not exist. In 1993, Congress sought to strengthen the ability of all FFLs to avoid transferring firearms to persons who could not legally possess them under state or federal law by amending the 1968 Gun Control Act with the "Brady Act." *See* Brady Handgun Violence Prevention Act, Pub. L. No. 103–159, 107 Stat. 1536 (1993). Pursuant to the Brady Act, before an FFL may sell or deliver a firearm to a non-FFL, he must complete a criminal background check through the National Instant Criminal Background Check System ("NICS") to ensure the purchaser is legally entitled to obtain and possess the firearm. 18 U.S.C. § 922(t). States may also create a Point of Contact ("POC"), who acts as a liaison to NICS, to run the background check and receive notice of anticipated firearms purchases by its citizens. See 28 C.F.R. §§ 25.1–.2, 25.6(d). In other words, to complete a background check, the FFL contacts either (1) the state POC, if there is one; or (2) NICS, if the state has not designated a POC. See id. Current law therefore ensures potential purchasers can legally acquire and possess a firearm under state and federal law, and those states that desire to receive notice of firearms purchased by its citizens simply establish a POC.

*Mance*, 74 F. Supp. 3d at 809.

18.    In short, "FFLs, wherever they may be located, are required to conduct background

checks under current law before they sell or deliver any firearm to a non-FFL. These checks identify both federal and state disabilities." *Id*. at 810 (citing §§ 922(b)(3) and (t)). Moreover, Defendant Richardson "is required to annually furnish FFLs with an updated compilation of state laws and published ordinances, which is necessary for them to ensure that their firearms transactions comport with state and local law." *Id*. at 810 n.11 (citing 27 C.F.R. § 478.24).

19.     As a result, the only function of the Nonresident Handgun Purchase Ban today is to add complexity and cost to the purchase of handguns from licensed dealers by lawful purchasers. An individual hoping to purchase a handgun from a dealer outside his or her home state must arrange and pay for the out-of-state retailer to ship the handgun to a licensed in-state retailer that would then complete the sale and transfer. Not all retailers are willing to perform interstate transfer services, however, and those that do typically charge a significant fee. And individuals who desire to acquire a handgun while out of state for use out of state simply cannot do so.

**THE NONRESIDENT HANDGUN PURCHASE BAN'S IMPACT ON PLAINTIFFS**

20.     Texas law does not bar the sale of handguns to people residing in other states. Plaintiff Elite Precision would sell handguns directly to consumers residing in other states (and in the District of Columbia), but refrains from doing so because the Nonresident Handgun Purchase Ban would subject it and its owner to arrest, prosecution, incarceration, a fine, and a complete loss of the business if it were to do so.

21.     Thus, when consumers residing outside Texas approach Elite Precision about purchasing handguns, it is company policy to decline to engage in those sales, and instead, Elite Precision offers only to ship the consumers' desired handguns to a retailer in their state for transfer there. Compliance with the Nonresident Handgun Purchase Ban thus makes Elite Precision handguns more expensive for these out-of-state consumers, and it delays such transactions. The

Federal Purchase Transfer Ban costs Elite Precision lost sales every year as competitors, trainers, hunters, or other visitors to the Dallas-Fort Worth area frequently seek to purchase handguns directly from Elite Precision but decide not to when they learn they have to coordinate the sale through another dealer in their home state. The Ban violates the Second Amendment protected rights of its prospective out-of-state customers. Elite Precision brings this action on its own behalf, and on behalf of its out-of-state handgun customers and would-be customers, including Plaintiffs Herron and Blish.

22.    Tim Herron is a peaceable citizen eligible to possess firearms under federal law, New Mexico law, and Texas law. Herron is a competitive shooter and a firearms trainer. He travels forty to fifty times a year to conduct firearms training classes around the country. When he travels, he regularly teaches at ranges that operate as FFLs as well and several times a year he finds a handgun while on the road that he would like to purchase.

23.    Due to the Nonresident Handgun Purchase Ban, however, he is never able to purchase the handgun on the spot and if he does eventually purchase it, which he does one or two times every year, the purchase involves arranging delivery of the handgun to an FFL located in Albuquerque, New Mexico, causing an additional cost of $30-40 and a delay on taking possession of the handgun.

24.    He travels approximately annually to Texas to conduct a firearms training class there. While in Texas, if it were not for the Nonresident Handgun Purchase Ban, Herron would purchase a handgun directly from Elite Precision.

25.     Because Herron, however, does not reside in Texas and does not wish to face prosecution for violating Sections 922(a)(3) or (a)(5), he cannot take possession of a handgun from Elite Precision.

8

26.    Plaintiff Blish is a peaceable citizen eligible to possess firearms under federal law, Arizona law, and Texas law. Blish is an instructor who teaches courses in handgun self-defense both in Arizona and in other states in the country, including in Texas. When he travels, Blish often shops for firearms and would, from time to time, purchase a handgun directly from an out of state dealer if it were not for the Nonresident Handgun Purchase Ban.

27.    Specifically, if it were legal for him to do so, he would buy a handgun directly from Elite Precision.

28.    However, because Blish does not reside in Texas and does not wish to face prosecution for violating Sections 922(a)(3) or (a)(5), he would not take possession of a handgun from Elite Precision.

29.    Plaintiff FPC's members include peaceable, responsible individuals throughout the United States who desire to, are not prohibited from, and do, purchase handguns for lawful purposes, including self-defense. But for the Nonresident Handgun Purchase Ban, FPC's members, including Plaintiffs Herron and Blish, would purchase handguns from dealers located outside their state of residence. The Nonresident Handgun Purchase Ban thus prohibits these intended transfers. The ban limits their choices as consumers, harms competition in the market, and raises prices, owing both to the fact that in-state dealers are shielded from competition by a national handgun market, and to the shipping and transfer fees that are incurred in the course of interstate handgun sales solely as a direct result of the Nonresident Handgun Purchase Ban. FPC brings this action on behalf of these members, including Plaintiffs Herron and Blish.

30.    FPC's members include peaceable, responsible individuals and entities throughout the United States who desire to, and do, sell handguns for traditional lawful purposes, including self-defense. But for the Nonresident Handgun Purchase Ban, FPC members, including Plaintiff

Elite Precision, would sell handguns directly to consumers outside the state in which they transact business. The Nonresident Handgun Purchase Ban thus frustrates these intended sales. To the extent that FPC members do sell handguns to consumers outside the sellers' states via middlemen dealers in the buyers' states (thus driving up the transaction costs), the Nonresident Handgun Purchase Ban makes these sales less competitive. FPC brings this action on behalf of these members as well, including Plaintiff Elite Precision, who in turn, would assert not only their rights, but the rights of their customers throughout the United States.

## CLAIM FOR RELIEF

### VIOLATION OF THE U.S. CONSTITUTION

#### U.S. CONST. AMEND. II

(Violation of the Right to Keep and Bear Arms)

31.    Plaintiffs incorporate the preceding paragraphs by reference as if fully set forth herein.

32.    The Second Amendment to the United States Constitution states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. *Bruen* confirmed that means-end balancing in the two-step inquiry conducted by the Fifth Circuit in *Mance* is not the proper test for evaluating Second Amendment claims: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " *Bruen*, 597 U.S. at 24 (citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

33.     Plaintiffs' proposed conduct here is covered by the Second Amendment's plain text. Plaintiffs are part of the "the people" that the Second Amendment protects and handguns, of course, are "arms" protected by the Second Amendment. *See Heller*, 554 U.S. at 580, 627–28, 29; *Bruen*, 597 U.S. at 31–32. Plaintiffs' proposed course of conduct here—purchasing handguns for lawful purposes—is also "presumptively protect[ed]" by the Constitution. *Bruen*, 597 U.S. at 17. Thus, it is Defendants' burden to "justify its regulation by demonstrating that [the regulation] is consistent with the Nation's tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

34.     Defendants cannot meet their burden here. In *Mance*, this Court already inquired into the Nation's historical tradition—or rather its lack of one—when it comes to residential requirements for purchasing firearms. Under the now defunct two-step test, this Court reviewed the historical record to "determine [whether] the law burdens conduct that falls within the Second Amendment's scope." 74 F. Supp. 3d at 804; *cf. Bruen*, 597 U.S. at 19 ("Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history.").

35.     Defendants were tasked with trying to meet the same historical burden that *Bruen* expressly requires, but they could not establish an analogous tradition of firearm regulation: "Defendants list the earliest known state residency restrictions on the purchase or possession of firearms, with the earliest of these restrictions occurring in 1909. Defendants have not presented, and the Court cannot find, any earlier evidence of longstanding interstate, geography-based, or residency-based firearm restrictions." *Mance*, 74 F. Supp. 3d at 805 (citations omitted). This Court concluded that "these early twentieth century state residency restrictions do not date back quite far enough to be considered longstanding." *Id*. Indeed, *Bruen* refused to consider there defendant New York's argument that early 20th-century regulations established a historical tradition when, as

11

here, it was not consistent with the Founding Era history: "the 20th-century evidence presented by respondents and their amici does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." 597 U.S. at 66 n.28; *see also id.* at 36 ("[P]ost-ratification adoption or acceptance of laws that are *inconsistent* with the original meaning of the constitutional text obviously cannot overcome or alter that text.") (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1274 n.6 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (emphasis in *Heller*)).

36.    In short, the United States could not muster "any evidence of founding-era thinking that contemplated that interstate, geography-based, or residency-based firearm restrictions would be acceptable," *Mance*, 74 F. Supp. 3d at 805. While the test has changed, history has not. Defendants cannot meet their burden here. Accordingly, the Nonresident Handgun Purchase Ban violates the Second Amendment.

## PRAYER FOR RELIEF

Plaintiffs request the following relief from this Honorable Court:

a.    Enter a declaratory judgment stating that the Nonresident Handgun Purchase Ban set forth in 18 U.S.C. §§ 922(a)(3), 922(a)(5), 922(b)(3), and 27 C.F.R. § 478.99(a), and all other related laws, regulations, policies, and procedures, violate the right to keep and bear arms secured by the Second Amendment to the United States Constitution;

b.    Enter a permanent injunction enjoining Defendants' enforcement or application of the Nonresident Handgun Purchase Ban set forth in 18 U.S.C. §§ 922(a)(3), 922(a)(5), 922(b)(3), and 27 C.F.R. § 478.99(a), and all other related laws, regulations, policies, and procedures, because it violates the right to keep and bear arms secured by the Second Amendment to the United States Constitution;

c.    Award Plaintiffs the costs of this action and reasonable attorneys' fees; and

d.    Award Plaintiffs such other legal and equitable relief as is just and appropriate and

as necessary to effectuate the Court's judgment.


Dated: January 20, 2025

Respectfully submitted,

/s/ R. Brent Cooper
R. Brent Cooper
Texas Bar No. 04783250
COOPER & SCULLY, P.C.
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone: (214) 712-9500
Telecopy: (214) 712-9540
brent.cooper@cooperscully.com


Cody J. Wisniewski*
FPC ACTION FOUNDATION
5550 Painted Mirage Road, Suite 320
Las Vegas, NV 89149
Telephone: (615) 955-4306
Telecopy: (615) 334-0463
cwi@fpcafhq.org

David H. Thompson*
Peter A. Patterson *
William V. Bergstrom*
COOPER & KIRK, PLLC
1523 New Hampshire Ave, N.W.
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com

*Applications for *pro hac vice*
admission forthcoming

*Attorneys for Plaintiffs*

13